■ In the Matter of the Claim of WILLIAM PREUSSER, Respondent, against ALLEGHENY LUDLUM STEEL CORPORATION, Appellant. WORKMEN'S COMPENSATION BOARD, Respondent.—Appeal by a self-insured employer from a decision and award made by the Workmen's Compensation Board which awarded compensation to claimant for a 30% loss of the use of his left hand, equivalent to 73⅕ weeks of disability. The employer was engaged in manufacturing

steel, and between November, 1948, and May, 1954, claimant worked for it in various capacities; as a straightener operator, floor man, radiac operator, crane operator and bundler. Between February, 1950 and January, 1951, he worked on a radiac machine, commonly called a "cut-off machine". In September of 1950 his left wrist became swollen and painful, and he reported this fact to the company nurse. He was given treatment by her, and was also examined and treated by the company physician. Claimant at that time made no mention of an accident and did not file any notice of claim. It was subsequently discovered that he was suffering from Kienbock's disease, a rather rare ailment of bone necrosis, which affected his left wrist. On November 30, 1951 claimant reported that he accidentally tripped over a wire on a bundle of steel and hurt his left wrist. On account of this accident he filed a claim for compensation, and hearings were held in connection therewith at which claimant was not represented by counsel. The medical proof indicated that claimant was unquestionably suffering from Kienbock's disease but there was no substantial proof that it could or did arise from the accident of November 30, 1951. There was some suggestion however that claimant might have suffered disability from such disease when his wrist became noticeably swollen and painful in September of 1950. The referee advised claimant that he might file a claim for an accidental injury as of that date, if he chose to do so. Claimant filed such a claim and obtained the services of an attorney. Of course the claim was late but the board excused the tardiness on the ground that the employer had furnished advanced payments of compensation by way of medical treatments, and was not prejudiced by the late filing. The board found that Kienbock's disease was an occupational disease due to the nature of claimant's employment, and contracted within 12 months of the date of his disablement, which was found to have been September 2, 1950. All of the physicians who testified agreed that the disease was caused by trauma, and one physician who testified for claimant gave as his opinion that claimant's condition was caused by the minimal trauma which he sustained in his daily work. Another physician gave a report to the same effect. This was substantial evidence in our opinion, and evidence that we are not empowered to weigh or balance against evidence to the contrary. There was also evidence from which the board could find that claimant did sustain minimal trauma from day to day when he operated either the straightening machine or the cut-off machine. Apparently from February, 1950, to January, 1951, claimant operated only the cut-off machine, but previous to that he had operated the straightening machine. The vibration effect from the former and the hammer effect from the latter constituted the minimal trauma he encountered in his daily work within the periods mentioned, according to the testimony both lay and medical most favorable to his claim. The board found only as to the cut-off machine, although it might have added the straightening machine. We do not regard this omission as reversible error. The board has found an occupational disease. What constitutes an occupational disease is not always easy to determine, but here there is a "recognizable link between the disease and some distinctive feature of the claimant's job", common to all jobs of that sort (*Matter of Detenbeck* v. *General Motors Corp.,* 309 N. Y. 558, 562), although the disease is by no means common. The line cannot be drawn entirely as a matter of law, and rests very largely in the domain of fact, and there was enough we think to sustain the finding of the board. The fact that claimant did not claim an accident on September 2, 1950, when he reported his condition to the company nurse, is of no moment. It can hardly be expected that a layman would know that he was suffering from an occupational disease, especially when physicians and the courts have their differences

on the subject. Decision and award affirmed, with costs to the Workmen's Compensation Board. Foster, P. J., Bergan, and Gibson, JJ., concur; Halpern, J., dissents in the following memorandum: I do not believe that the award can be sustained upon the basis of the findings of fact before us. The board found that on September 2, 1950, the claimant became disabled as the result of an occupational disease which he contracted while working on a cut-off machine from February, 1950 to September, 1950. There is no substantial evidence in the record, viewed as a whole, that the operation of the cut-off machine caused the claimant's condition or that the use of such a machine commonly subjected the operators thereof to the risk of contracting the disease of which the claimant complained, "as a natural incident of [the] particular occupation" (*Matter of Detenbeck* v. *General Motors Corp.*, 309 N. Y. 558, 561). It appears that the claimant worked at a different machine, known as a straightener, from November, 1948 to August, 1949. There is evidence that the claimant's condition may have resulted from the repeated traumas caused by the hammering action of that machine but there is no finding by the board with relation to the operation by the claimant of that machine at any time, and there is no finding as to the occupational disease or diseases incident to the use of that machine. If it is to be found that an occupational disease was contracted by the claimant as a result of the action of the straightener, not only will the name of the machine have to be changed in the board's findings but the period of contraction of the disease will also have to be changed and additional findings will have to be made as to the effect of the use of the machine. I do not believe that we have power to make these changes in the board's findings in order to affirm the award. The award should be reversed and the matter remitted to the board for further proceedings.